BAILES, Judge.
This action was instituted to recover damages suffered by plaintiffs when their residence fell hato ruin and delapidation allegedly because defendants performed poor workmanship and used defective materials in the construction of it for plaintiffs. Plaintiffs purchased the lot of ground and contracted with defendants for the construction of the residence and acquired title to the lot of ground and the building in a package deal for the price of $16,000. They seek to recover the purchase price of $16,000, for mental anguish, suffering and embarrassment $10,-000, and $480 for expenses in investigating the cause of the damages, making a total of $26,480.
After disposing of certain issues raised by an exception of vagueness, exceptions of no cause or right of action and an exception of prescription of one year, the trial court’s ruling on these exceptions not being contested on this appeal, the matter was tried on its merits. From an adverse judgment in favor of plaintiffs in the amount of $6,150, the defendants prosecute this appeal.
The defendants, Clarence S. Pruyn, Clarence S. Pruyn, Jr., and Thomas R. Pruyn, being father and two sons, in 1957, subdivided and developed a subdivision known as Forest Hill Subdivision. During the early part of this same year, plaintiff became interested in acquiring a residence in this locality. Specifically, plaintiffs became interested in acquiring Lot No. 11 of this subdivision, and after selecting this particular lot of ground, contracted for the construction of the residence which forms the subject matter of this litigation.
As a basis for this action, plaintiff charges defendants in general with constructing the residence in an unworkman-like manner and with the use of defective and faulty materials, and in their petition specifically allege the following:
“10.
“Subsequent to the purchase of the home by the petitioners, there occurred damages to the house by reason of cracks occurring *691 in the concrete slab at various places and at various intervals of time. This falling to ruin of the said home is the result of the failure to construct in a good and workmanlike manner, and on account of the badness of the workmanship of the defendants, particularly, but not exclusively, as follows:
1. In building the home with a concrete slab of inadequate and defective strength.
2. In building the concrete slab in such close proximity to numerous large trees so as to cause the roots of the large trees to deplete the soil moisture to an extent that there was shrinkage of the soil under portions of the structure, resulting in the cracking of the concrete slab at various intervals of time and in various places under said home.
3. In failing to determine the nature, type and qualities of the soil upon which the home or residence was constructed.
4. In failing to use proper materials and workmanship in constructing the concrete slab upon which the home was built.
5. In using inadequate, inferior, defective materials in the construction of the concrete slab.
6. In constructing the home in an un-workmanlike manner.”
For proof of the merits of their asserted claim, plaintiffs offered the expert testimony of Dr. Louis J. Capozzoli, Jr., of Baton Rouge, a consulting engineer, specializing in soil mechanics, soil investigation and foundation work; a Mr. Cecil C. Loewen, an inspector in the employ of the Federal Housing Administration, who appeared primarily for the purpose of producing certain documents in obedience to a subpoena duces tecum served on the New Orleans office of the Federal Housing Administration; a Mrs. Myrtle R. Noble who on behalf of a nursery prepared and planted certain flower beds. Her testimony consisted almost entirely of testifying that she found in preparing the flower beds a limb or trunk of a small tree about six inches in diameter extending partly under the concrete slab below the surface of the grade of the lot; and finally the testimony of a house builder, Mr. R. J. Thibodeaux, who described the condition of the residence as he found it on a recent inspection of the premises.
From the testimony of the plaintiffs themselves, and the other witnesses who had inspected the premises in question, there can be no doubt about the alleged delapidated and ruinous condition of the house, however not one witness has testified that the materials or the workmanship which went into the construction of this house was in any manner substandard or defective. The only charge of fault which plaintiffs have approached in proof is that defendants built “the concrete slab in such close proximity to numerous large trees so as to cause the roots of the large trees to deplete the soil moisture to an extent that there was shrinkage of the soil under portions of the structure, resulting in the cracking of the concrete slab at various intervals of time and in various places under said home.”
On the question of the adequacy of the strength of the soil to bear' the weight of the building, Dr. Capozzoli testified: (Tr. p. 76.),
“Q. Now, Dr. Capozzoli, did you have occasion to inspect the soil at the residence of Mr. & Mrs. Edward Wurst, the plaintiffs in this case?
A. Yes, I did.
Q. Now, from your inspection, what type of soil did you find underneath the foundation in the area where this house was built?
A. The soil there from the strength standpoint was more than adequate *692 to support the weight of that house.”
In stating his conclusion as to what caused the concrete slab to crack and settle, Dr. Capozzoli testified: (Tr. p. 77.)
“Q. Will you please tell the Court what, in your opinion was the cause of the breaking of this foundation, and what, if anything, could have been done by the builder to avoid the breaking of the foundation?
A. The cause of the various cracks and breaking of the foundation was the presence of the several large trees around the house. The action of the trees in causing this damage is as follows: Trees and other vegetation or structures require water to grow. They get this water from the soil where it is replenished by rainfall or adjacent streams. When, or as they take this water from the soil, they will dry the soil. The soil the structure is on behaves to a certain extent like the ordinary cellulose sponge. As it dries, it shrinks. Conversely, if you give it a lot of water, it will expand. These trees have dried the soil and caused it to shrink, and as it shrank, or as the soil shrank and moved, as the soil moved, the house resting on it also moved. The movement of the house produced the cracking pattern that is evidence at the present time. * *
In explaining what might be done to prevent this type of occurrence where trees are in close proximity to a structure constructed in the manner of this residence, Dr. Capozzoli testified that a trench or ditch can be dug around the residence about one to two feet wide and about ten feet deep. After this is done, this trench should be filled with gravel to about one foot of the top. Then perforated pipe is installed and through the use of a constant level automatic float, this trench can be maintained full of water. This structure would act as a buffer to prevent the depletion of natural moisture under the slab. The cost of such a preventive device would be approximately $500 to $1,000. His testimony shows he found ten trees about the house ranging in size from eight inches to forty-two inches in diameter.
All of the witnesses testified that the trees were desirable about a residence, and the plaintiffs testified that the presence of these trees was an inducement for them to purchase this property.
In view of the lack of proof of use of either defective workmanship or defective or faulty materials, the demands of the plaintiff must stand or fall on the question of whether the defendants are liable to the plaintiffs because of the action of the soil or shrinkage of the soil by the depletion of moisture therefrom through its utilization by the trees.
The trial court held:
“Expert testimony convinced the Court that the damages to the house were caused by locating the slab on which it was constructed in too close proximity to certain trees located on the lot. The testimony revealed that the trees took the moisture from the soil under the slab, thus causing the soil to give way and thereby causing the slab to settle and crack. In deciding the question of liability, the Court considered that the defendant contractors have or should have superior knowledge about such matters and that the failure of the works constructed by them was due to their locating the house in too close proximity to the trees when they knew or should have known that to place their works in such a place was to place the same upon a faulty foundation was in violation of their contractual agreement to construct a house for plaintiffs in a good and workmanlike manner.
*693 “Therefore, in the Court’s opinion, it does not avail the defendants to claim that the materials and workmanship in the residence building were of good quality and followed construction plans if the total work was located on a foundation that would fall to ruin.”
The defendants assign the following specifications of error to the holding of the trial court:
“I. Having concluded that the relationship of vendor-vendee did not exist, and that this was a suit on a contract, the Trial Judge committed error in holding that the contractor was liable for failing to anticipate what the moisture content of the soil would be some years hence and in failing to take the suggested steps to avoid the same.
“II. That the moisture content Oof the soil is governed by natural causes, such as rain, sun, drainage and perhaps the existence of plant life, as well as trees and is one of those ordinary hazards common to all and the Trial Judge committed error in holding the contractor-defendants responsible for the same.”
• No builder testified that the recommendation for the prevention of or the correction of the determined fault had been used in the construction of any residence in this area. It was conclusively shown that the expenditure of this amount of money on this type and price range dwelling could not be sustained. Mr. Loewen, the representative of the FHA testified this house, including the lot of ground, had FHA approval, and that this particular house was of good construction. He further testified a boundation such as was utilized under this structure with 2500 lb. concrete met FHA requirements, and that the expense of the preventive measure recommended by Dr. Capozzoli could not be justified as an expense on a residence of this price range.
Plaintiffs argue in their brief that the defendants breached their contract by building the house on a faulty foundation. To support this argument, they cited LSA-C.C. Article 2762, which provides:
“If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.” (Emphasis supplied.)
Also, LSA-C.C. Article 2769 provides:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.”
They contend Article 2762 provides the basis for the liability of the defendants for damages “on account of the badness of the workmanship.” They argue approvingly of what the court said in Kuhlman v. Talley (La.App.1962) 145 So.2d 101, namely:
“[2,3] The defendant seeks to escape liability on the ground that under LSA-C.C. art. 2762 a contractor is not liable for defects of the soil — citing Fremont v. Harris, 9 Rob. 23 and Powell v. Markham, 18 La.Ann. 581. While it may be said that these decisions stand for the proposition that a contractor is not liable for defects caused by badness of the soil, the law is quite clear that a contractor who is aware of such defects and fails to adjust the construction to take care of them or fails to call them to the attention of the owner, is liable for having failed to construct the building properly according to accepted building practices. Chatelaine v. Globe Construction Co., 229 La. 280, 85 So.2d 515. Although the hydrostatic con *694 dition of the soil cannot be attributed to the work performed by the defendant, his failure to prevent water seepage by properly constructing the concrete floor render him liable for the resulting defects in the tile floor.”
We find the trial court fell into error when, as a matter of law, it held “the defendant contractors have or should have superior knowledge about such matters * * * when they knew or should have known that to place their works in such a place was to place the same upon a faulty foundation.” We find there is no basis for holding the defendants are chargeable with any superior knowledge of the effect of the presence of the trees on the stability of the soil any more so than the plaintiffs themselves would have had. At the time the structure was placed on the soil there was no fault in the soil or was there any badness of the soil. The depletion of moisture and the shrinking effect produced thereby was certainly dependent on natural causes and the happening of conditions totally beyond the control of these defendants. The effect of the ruling of the trial court would be to make the builder of houses the insurer against the happening of natural causes which affect the condition of the soil for a period of time far beyond the completion of the structure.
A close reading of Kuhlman v. Talley, supra, which apparently was the case relied on by the trial court, shows that therein the court held the “law is quite clear that a contractor who is aware of such defects and fails to adjust the construction to take care of them or fails to call them to the attention of the owner, is liable for having failed to construct the building properly according to accepted building practices.” (Emphasis supplied)
The Kuhlman case is authority only for the proposition that if a contractor knows of defects which would affect the construction and fails to make adjustments or to inform the owners, he is liable. That is not the case before us herein.
The liability vel non of the defendant must be adjudged on the basis-of the provisions of LSA-C.C. Articles 2762 and 2769. In the application of these two Articles to the facts of this case,, we find no legal liability attaching to-the conduct and actions of the defendants-in the fulfillment of their contract with plaintiffs for the construction of the residence in question on the grounds asserted herein.
The judgment of the trial court in favor of plaintiffs and against the defendants is reversed, and there is judgment herein-in favor of defendants rejecting the demands of the plaintiffs at their costs.
Reversed.